1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9
10

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:19-mj-00197-SAB |
| Plaintiff, | ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |
| v. | |
| PABLO VELASQUEZ, JR., | (ECF No. 27) |
| Defendant. | |

16
17

**I.**

18

**INTRODUCTION**

19      Pablo Velasquez, Jr. ("Defendant" or "Velasquez"), moves the Court for an order

20  reducing his sentence of incarceration under 18 U.S.C. § 3582(c)(1)(A) for "extraordinary and

21  compelling circumstances" in light of the COVID-19 pandemic, his high-risk health issues, and

22  the sentencing factors set forth in 18 U.S.C. § 3553(a).  Plaintiff the United States of America

23  (the "Government" or the "United States"), does not oppose a delayed surrender in light of the

24  current conditions regarding COVID-19 ongoing at the Fresno County Jail, but argues Velasquez

25  is not eligible for relief because he does not meet the requirements for compassionate release.  If

26  the Court is not inclined to delay the surrender date, the Government requests the Court deny

27  Defendant's motion.  The Court held a hearing on Defendant's motion on January 21, 2021.

28  (ECF No. 54.)  Having considered the moving, opposition, and reply papers, the exhibits and

declarations attached thereto, the arguments presented at the January 21, 2021 hearing, as well as the Court's file, the Court issues the following order denying the Defendant's motion.

## II.

## BACKGROUND

### A.    Factual Allegations Contained in the Criminal Complaint

On August 18, 2019, a National Park Service employee at the Ash Mountain Entrance of Sequoia National Park stated that she observed an open Modelo beer can in the passenger area of a white Ford F-150.  (Criminal Complaint, ECF No. 1 at 2.)  Approximately two minutes after the report, United States Park Ranger Justin Price ("Ranger Price") saw a vehicle that matched the description, and after traveling behind the suspect vehicle to find a safe place to stop the vehicle, Ranger Price activated his emergency lights and initiated a stop.

Upon approaching the driver's side of the vehicle, Ranger Price could smell the odor of alcohol coming from inside the vehicle, and Ranger Price advised the individual later identified as Defendant Velasquez that an employee at the entrance station had observed an open can of beer inside the vehicle.  Velasquez stated the can was on his passenger floorboard.

Ranger Price instructed Defendant to produce his driver's license, to which Defendant responded that he did not have one.  Ranger Price ran Defendant's information through the park dispatch and was advised that Defendant's driver's license was suspended for driving under the influence.  Dispatch also advised that service was not required.

Ranger Price performed a Field Sobriety Test and Velasquez provided a breath sample with a blood alcohol concentration of 0.023%.  Defendant was released at the scene.

### B.    Procedural History

On October 18, 2019, Defendant was charged by complaint with two counts: (1) driving while suspended for DUI, in violation of 36 C.F.R. 4.2(b), California Vehicle Code 14601.2(a); and (2) driving without a valid license, in violation of 36 C.F.R. 4.2(b), California Vehicle Code 12500.  (ECF No. 1.)  On June 25, 2020, Defendant admitted to Count Two of the complaint.  (ECF No. 15.)  On the same date, the undersigned sentenced Defendant to fifteen (15) days custody with self-surrender on October 2, 2020, to be served on weekends; twelve (12) months

1    unsupervised probation; and a $300.00 fine and $10.00 special assessment.  (<u>Id.</u>)

2    On October 1, 2020, the Court granted in part and denied in part a stipulated request to

3    amend the surrender date.  (ECF No. 19.)  While the parties sought to extend the surrender date

4    until January 8, 2021, the Court rejected such proposed date in light of the fact that the infection

5    rate in the area was decreasing; the Fresno County Jail met the conditions to be moved to a lower

6    tier and was moving toward reopening; and because the infection rate could potentially be higher

7    in January of 2021.  (<u>Id.</u>)  The Court ordered Defendant to self-surrender on November 6, 2020.

8    (<u>Id.</u>)

9    On November 3, 2020, the Court granted a request to set a briefing schedule for

10   Defendant to file a motion pursuant to 18 U.S.C. § 3582(c), but denied a request to stay the

11   imposition of imprisonment pending the filing of such motion.  (ECF No. 21.)  On November 5,

12   2020, Defendant appealed the Court's November 3, 2020 order and filed a proposed order

13   regarding an emergency motion to stay his self-surrender date.  (ECF Nos. 22, 23.)  On the same

14   date, District Judge Dale A. Drozd held a status conference as to the appeal and granted

15   Defendant's motion to stay pending the resolution of Defendant's 18 U.S.C. 3582(c) motion.

16   (ECF Nos. 24, 25.)  On November 20, 2020, Defendant filed the instant motion under 18 U.S.C.

17   3582(c).  (ECF No. 27.)  On November 24, 2020, Defendant filed exhibits to this motion as well

18   as a request to seal Exhibit B to the motion for compassionate release, and on November 25,

19   2020, the Court granted Defendant's request to seal Exhibit B, until further order.  (ECF No. 32.)

20   On December 11, 2020, the Government filed an opposition to Defendant's motion.

21   (ECF No. 34.)  On December 21, 2020, Defendant filed a reply to the Government's opposition.

22   (ECF No. 35.)

23   The Court held a hearing on Defendant's motion on January 21, 2021.  (ECF No. 36.)

24   Matthew Lemke appeared on behalf of Defendant, and Philip Tankovich appeared on behalf of

25   the Government.

26   ///

27   ///

28   ///

**C.     Previous Criminal History**

The Government submits the following criminal history timeline of Defendant, that includes seventeen (17) adult convictions:

- Driving Suspended License – CVC 14601.2(a)
  - Convicted: September 4, 2007
  - 36 months of probation; 30 days jail
- DUI 0.08 – CVC 23152(b)
  - Convicted: May 8, 2009
  - 60 months of probation; 180 days jail; fine
- Driving Suspended License – 14601.2(a)
  - Convicted May 8, 2009
  - 60 months of probation; 180 days jail; fine
- Suspended License – CVC 14601.5 Refuse Test
  - Convicted: March 17, 2009
  - 36 months of probation; 90 days jail; work program
- Possession Controlled Substance – HS 11377(a)
  - Convicted: February 18, 2010
  - 36 months of probation; 180 days jail
- Suspended License – 14601.2(a)
  - Convicted: February 18, 2010
  - 180 days jail concurrent
- No Interlock Ignition Device – 23247(e)
  - Convicted: February 18, 2010
  - 180 days jail concurrent
- No Proof of Financial Responsibility – 16028(a)
  - Convicted: February 18, 2010
  - 180 days jail concurrent
- Possession Personal ID with intent to Defraud – 530.5(c)(1)

1                •   Convicted: February 18, 2010

2                  •   60 days jail concurrent; 36 months of probation

3          ▪   Receipt of Stolen Property – 496(a)

4                •   Convicted: February 18, 2010

5                  •   60 days jail concurrent; 36 months of probation

6          ▪   Possession of Controlled Substance for Sale – 11378 HS

7                •   Convicted: July 22, 2010

8                  •   8 months in prison

9          ▪   First Degree Burglary – 459

10               •   Convicted: June 23, 2010

11                •   4 years in prison, concurrent, consecutive

12          ▪   Obstructing Public Officer – 148(a)(1)

13               •   Convicted: December 18, 2012

14                •   45 days jail

15          ▪   False ID to Peace Officer – 148.9(a)

16               •   Convicted: December 18, 2012

17                •   90 days jail; 36 months of probation

18          ▪   CCW in Vehicle – 25400(a)(3)

19               •   Convicted: November 7, 2013

20                •   4 years in prison

21          ▪   Use/Under Influence Controlled Substance – 11550(a) HS

22               •   Convicted November 7, 2013

23                •   4 years in prison

24          ▪   False ID to Peace Officer – 148.9(a)

25               •   Convicted: November 7, 2013

26                •   4 years in prison

27 (United States of America's Opp'n Def.'s Mot. ("Opp'n") 2-3, ECF No. 34.)

28 ///

1        **D.        COVID-19 Status at the Fresno County Jail**

2        Defendant is not currently in custody, and is expected to serve his fifteen (15) day

3    sentence at the Fresno County Jail, a county jail facility that has contracted with the U.S.

4    Marshal Service to hold federal defendants.  (Def.'s Mot. Compassionate Release ("Mot") 2,

5    ECF No. 27; Opp'n 4.)  The Government provides the Court with information as to the specific

6    situation at the Fresno County Jail ("FCJ") and its response to the COVID-19 situation, as of the

7    date of filing of the opposition on December 11, 2020.  (Opp'n 5.)

8        The Government states the FCJ has taken a number of steps to ensure the safety of their

9    inmates and staff including: (1) the booking area is closed daily for one hour in the morning for a

10   full sanitation using a bleach and water solution; (2) FCJ has contracted with WellPath for

11   medical services and is fully provisioned with emergency plans in place; (3) WellPath is treating

12   and medically monitoring all positive cases; (4) FCJ has asked for and is receiving additional

13   health care staff from WellPath corporate and also from the Department of Public Health; (5)

14   nurses are conducting pre-screening on arrestees in the sally port prior to entrance into the

15   facility to identify individuals with possible COVID-19 symptoms; (6) the pre-screening

16   includes taking the temperature of the individuals and asking them a series of screening

17   questions; (7) if an individual does not pass the pre-screen, the jail nurse will come out to the

18   sally port to conduct a normal/full screening, and if the individual does not pass screening, they

19   will be refused per normal protocols; (8) common areas of the FCJ housing units are disinfected

20   daily; (9) inmates are provided cleaning materials to clean their cells; (10) all phone areas have

21   disinfectant spray as well as directions for inmates to clean the phones with the spray before and

22   after each use; (11) all inmates are provided with anti-bacterial soap, and other hygiene materials

23   are available at the commissary or will be provided to an inmate if he does not have the means to

24   purchase them; (12) showers are disinfected with a bleach/water solution; (13) all inmates have

25   been provided a cloth mask to wear, including new inmates who receive a cloth mask during the

26   booking process; and (14) jail staff wear personal protective equipment, including masks and

27   gloves, when contacting or moving inmates.  (Opp'n 5.)

28       The Government proffers that as of December 10, 2020, there were twenty-two (22)

1   inmates positive for COVID-19 in the FCJ, and FCJ has segregated the inmates into infected and

2   exposed pods, depending on the inmate's test status.   Inmates who have tested positive for

3   COVID-19 are quarantined in the exposed pods.   All other inmates in the North Jail are in

4   exposed pods because they have potentially been exposed, and their test results are either

5   negative or still pending, and thus they are still in quarantine.  The Government states it has been

6   informed that the inmates are being screened twice a day, and tele-medicine and tele-psych care

7   is being provided if needed.   Additionally, if the symptoms are severe enough to warrant

8   hospitalization, inmates are being sent to the hospital for further treatment.  (Opp'n 5.)

9                                                            **III.**

10                                              **LEGAL STANDARD**

11          The general rule is that a court "may not modify a term of imprisonment once it has been

12   imposed."  18 U.S.C. § 3582(c); Dillon v. United States, 560 U.S. 817, 824, 130 S. Ct. 2683,

13   2690, 177 L. Ed. 2d 271 (2010).   The compassionate release provision of 18 U.S.C. §

14   3582(c)(1)(A) provides one exception to this general rule.   The statute provides in relevant part:

15          (A) the court, upon motion of the Director of the Bureau of Prisons, or upon
            motion of the defendant after the defendant has fully exhausted all administrative
16          rights to appeal a failure of the Bureau of Prisons to bring a motion on the
            defendant's behalf or the lapse of 30 days from the receipt of such a request by
17          the warden of the defendant's facility, whichever is earlier, may reduce the term
            of imprisonment (and may impose a term of probation or supervised release with
18          or without conditions that does not exceed the unserved portion of the original
            term of imprisonment), after considering the factors set forth in section 3553(a) to
19          the extent that they are applicable, if it finds that—

20          (i) extraordinary and compelling reasons warrant such a reduction;

21          [. . .]

22                   and that such a reduction is consistent with applicable policy statements
                     issued by the Sentencing Commission;
23

24   18 U.S.C. § 3582(c)(1)(A).

25          Therefore, the statutory requirements for a sentence reduction under this provision are

26   that the Court: (1) find extraordinary and compelling reasons for the reduction; (2) consider the

27   relevant sentencing factors under 18 U.S.C. § 3553(a), if applicable; and (3) ensure any reduction

28   is consistent with the applicable policy statements issued by the Sentencing Commission.  18

U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's relevant policy statement on compassionate release identifies medical conditions that satisfy the "extraordinary and compelling" requirement. U.S.S.G. § 1B1.13, cmt. n. 1(A). Specifically, the "extraordinary and compelling" requirement is met where a defendant is: (i) suffering from a terminal illness; or (ii) suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." Id.

To be eligible for compassionate release, a defendant must also demonstrate that he is "not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). The Court must further consider the § 3553(a) factors before granting compassionate release. See 18 U.S.C. § 3582(c)(1)(A). Section 3553(a) provides:

> **(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
>> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>>
>> **(2)** the need for the sentence imposed—
>>
>>> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>>
>>> **(B)** to afford adequate deterrence to criminal conduct;
>>>
>>> **(C)** to protect the public from further crimes of the defendant; and
>>>
>>> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>>
>> **(3)** the kinds of sentences available;
>>
>> **(4)** the kinds of sentence and the sentencing range established for—
>>
>>> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

**(i)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(ii)** that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

**(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

**(5)** any pertinent policy statement—

**(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced[;]

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

## IV.

## ANALYSIS AND DISCUSSION

Defendant submits he suffers from several medical conditions that increase the risk of severe illness or death from complications if he were to contract COVID-19 in prison, that he is gainfully employed, has strong family support, and poses no risk of danger to the community. If he is incarcerated, he would be taken into the custody of the Fresno County Jail, which is in the midst of an ongoing COVID-19 outbreak. For these reasons, Defendant moves the Court to reduce his sentence by vacating the remaining term of incarceration under the "compassionate release" statute, 18 U.S.C. § 3582(c)(1)(A)(i). (Mot. 1-2.)

The United States does not oppose a delayed surrender in light of the current conditions due to the COVID-19 pandemic, but requests the Court deny Defendant's motion to vacate the term of imprisonment imposed by the Court.  (Opp'n 8.)   Specifically, the Government acknowledges that at the time of filing, Fresno County Jail had seen a sharp rise in COVID-19 infections in the preceding several weeks, and there were 22 inmates testing positive, with 91 inmates in precautionary quarantine.  (Id.)  The Government further concedes that Defendant's particular sentence, permitting concurrent weekends, would mean that Velasquez would enter and exit the jail between five and seven times, increasing both his own exposure to COVID-19, as well as that of other inmates.  (Id.)  Thus, the Government submits that it might be appropriate to delay surrender until the spring or summer of 2021.  (Id.)  However, the Government argues Defendant has failed to demonstrate the sentence should be vacated because he has not demonstrated extraordinary and compelling reasons to commute the sentence, particularly in light of the Section 3553(a) factors.  (Id.)

### A.    Exhaustion Requirement

Defendant proffers that he is not currently in the custody of the Bureau of Prisons ("BOP"), and if he begins his term of incarceration, he would submit himself to the custody of the Fresno County Jail, which is a local facility that contracts with the U.S. Marshal Service to house federal inmates.  (Mot. 3.)  Because Defendant is expected to serve his term of incarceration in a non-BOP facility, he cannot exhaust his remedies within the BOP because it will not have custody of him at any time during his term of incarceration.  Defendant requests the Court find he has satisfied the applicable exhaustion requirement.  (Mot. 3, citing United States v. Hernandez, 451 F. Supp. 3d 301, 303 (S.D.N.Y. 2020).)  In response, the Government agrees that given Defendant is not in BOP custody but would be held in custody of the U.S. Marshals in Fresno County Jail, the BOP cannot yet process or reasonably assess any such administrative requests.  Thus, the Government concedes that while administrative exhaustion is ordinarily required, given the particular circumstances of this case, the Government waives this requirement and requests the Court proceed immediately to the merits of the motion.  (Opp'n 4.)

Accordingly, the Court finds that under the circumstances present here, the Government

1    is not in a position to adjudicate any request for an administrative remedy, Plaintiff has thus

2    exhausted any possible administrative remedies, and the Court will proceed to the merits of the

3    Defendant's motion.  See Hernandez, 451 F. Supp. 3d at 303 ("[T]he BOP, confirmed . . . that it

4    has denied Mr. Hernandez's request, not because Mr. Hernandez has been found undeserving of

5    compassionate release, but because the BOP is structurally incapable of assessing his

6    circumstances . . . because Mr. Hernandez is in the custody of the United States Marshals at a

7    private facility—not in the custody of the BOP—[and] the BOP 'cannot evaluate him for

8    compassionate release and will not be seeking a motion for compassionate release on his behalf

9    at this time.' . . . the Government agrees, that, as a result of this denial, Mr. Hernandez has

10   exhausted his administrative remedies through the BOP.").

11
12       **B.     Whether COVID-19 and Defendant's Health Conditions Present
                  Extraordinary and Compelling Reasons Warranting a Sentence Reduction**

13           It does not appear that the Government disputes, and the Court will accept, Defendant's

14   proffer that COVID-19 is a serious disease that can lead to severe illness and death, and is

15   significantly more dangerous than the influenza virus.  (Mot. 4.)[1]  The Court will also accept

16   Defendant's proffer that COVID-19 has spread in prisons and jails, and that as a jail inmate, it

17   will be impossible for Defendant to follow each of the recommendations from the Centers for

18   Disease Control and Prevention ("CDC").  (Mot. 5.)

19           Defendant contends that he is at increased risk for serious illness or death from COVID-

20   19 complications should he contract the virus due to his high body mass index ("BMI") and other

21   medical conditions.  Defendant emphasizes the CDC and other medical authorities have clarified

22   that COVID-19 is especially dangerous for people with severe chronic medical conditions, and

23   those with certain conditions, including obesity, Type 2 diabetes, high blood pressure, and a

24   history of smoking, are especially vulnerable to and at a higher risk for serious complications

25

---

26   [1]   Plaintiff provides a declaration of Chris Beyrer, MD, MPH, Professor of Epidemiology, Johns Hopkins
     Bloomberg School of Public Health, attached as Exhibit A to Plaintiff's motion.  (ECF No. 29 at 1-5.)  Plaintiff

27   points to the statement therein that the current best estimate is that the fatality rate among all demographics "is 5-35
     times the fatality associated with influenza infection."  (Id. at 2.)  The Court notes that the declaration was signed on
     March 16, 2020, and thus it is not clear whether this would still be the current best estimate for such fatality rate

28   given the length of time since the beginning stages of the pandemic.

1  such as pneumonia and acute respiratory disease from COVID-19, including death.  (Mot. 5.)

2  Defendant's medical records — filed under seal — confirm that he currently suffers from

3  multiple health conditions.  (ECF No. 33.)  The Government concedes the medical records

4  corroborate Plaintiff's claims and indicate Plaintiff has: (1) a history of smoking; (2) suffers from

5  Type 2 diabetes and is prescribed Metformin; (3) suffers from "elevated" blood pressure

6  according to categories defined by the American Heart Association; and (4) has a current weight

7  equating to a BMI of 48.7.  (Opp'n 4.)

8  Defendant's records indicate his BMI puts him in the category of severe obesity.  The

9  CDC has identified obesity, defined as a BMI of 30 kg/m$^2$ or above, and severe obesity, defined

10  as a BMI of 40 kg/m$^2$ or above, as conditions that increase the risk of severe illness for adulty of

11  any age, from the virus that causes COVID-19.  See Coronavirus Disease 2019 (COVID-19),

12  People at Increased Risk, People with Certain Medical Conditions, Centers for Disease Control,

13  available   at   https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-

14  medical-conditions.html (last visited January 15, 2021); see also United States v. Richardson,

15  No. 2:17-CR-00048-JAM, 2020 WL 3402410, at *3 (E.D. Cal. June 19, 2020) ("Severe obesity

16  also places Defendant at higher risk of serious health problems should he contract COVID 19.").

17  Defendant's records also indicate he suffers from Type 2 diabetes.  According to the

18  CDC, adults of any age with Type 2 diabetes mellitus are at an increased risk of severe illness

19  from COVID-19.  See Coronavirus Disease 2019 (COVID-19), People at Increased Risk, People

20  with   Certain   Medical   Conditions,   Centers   for   Disease   Control,   available   at

21  https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-

22  conditions.html (last visited January 15, 2021).  Defendant highlights that courts, including this

23  one, have granted motions for compassionate release filed by inmates with type 2 diabetes.  See,

24  e.g., United States v. Sharma, No. 2:15-CR-00051-KJM, 2020 WL 6802404, at *4 (E.D. Cal.

25  Nov. 19, 2020) (noting "[m]any district courts, including this one, have granted motions for

26  compassionate release filed by inmates with Type 2 diabetes," and finding the health condition

27  and high risk of infection provided extraordinary and compelling reasons under Section 3582(c)

28  to reduce sentence of incarceration to time served, after serving a total of 25 months and 18 days

1  of 46 months imposed after pleading guilty to one count of concealment of bankruptcy assets);

2  United States v. Bradley, No. 2:14-CR-00293-KJM, 2020 WL 3802794, at *4 (E.D. Cal. July 7,

3  2020) (finding defendant's hypertension, asthma and diabetes in connection with the likelihood

4  of COVID-19 infections spreading through the prison and absence of comprehensive information

5  on BOP's COVID-19 management plan for inmates with defendant's comorbidity factors,

6  demonstrated extraordinary and compelling reason to warrant a sentence reduction to time served

7  of a 96 month imprisonment sentence with a release date of June 30, 2021, imposed after a guilty

8  plea of a single charge of being a felon in possession of a firearm).

9          Defendant also suffers from elevated blood pressure and has a history of smoking.  (Mot.

10  6.)  Defendant proffers research shows that persons with high blood pressure are more likely to

11  get COVID-19, to have worse symptoms, and to die from infection and its complications.  See

12  Coronavirus and High Blood Pressure: What's the Link?, WebMD, available at

13  https://www.webmd.com/lung/coronavirus-high-blood-pressure (last visited January 15, 2021).

14  Defendant emphasizes the CDC has reported there is a 6% mortality rate for COVID-19 patients

15  with hypertension, compared with a 0.9% fatality rate for patients without any underlying

16  condition.  The Court notes that the cases provided for this proposition are from the early stages

17  of study of the impacts of the pandemic.  See United States v. Reid, No. 17-CR-00175-CRB-2,

18  2020 WL 2128855, at *3 (N.D. Cal. May 5, 2020) ("Moreover, the CDC reports that there is a

19  6% mortality rate for COVID-19 patients with hypertension, compared with a 0.9% fatality rate

20  for patients without any underlying condition.") (citing Interim Clinical Guidance for

21  Management of Patients with Confirmed Coronavirus Disease (COVID-19), Centers for Disease

22  Control and Prevention).  The CDC website cited for that proposition does not appear to reflect

23  that same statistic, though does generally state that: "Heart conditions, including heart failure,

24  coronary artery disease, cardiomyopathies, and pulmonary hypertension, put people at higher

25  risk for severe illness from COVID-19," and "[p]eople with hypertension may be at an increased

26  risk for severe illness from COVID-19 and should continue to take their medications as

27  prescribed."  See Interim Clinical Guidance for Management of Patients with Confirmed

28  Coronavirus Disease (COVID-19), Centers for Disease Control and Prevention, available at

1  https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html

2  (last visited January 15, 2021); see also United States v. Dunlap, 458 F. Supp. 3d 368, 370

3  (M.D.N.C. 2020) (noting the CDC's guidance stating "COVID-19 is especially dangerous for

4  both the elderly and those with severe chronic medical conditions, including hypertension, and

5  that 8 of 10 COVID-19 deaths reported in the United States have been in older adults."); United

6  States v. Robinson, No. 18-CR-00597-RS-1, 2020 WL 1982872, at *2 (N.D. Cal. Apr. 27, 2020)

7  ("Robinson also suffers from hypertension, which the Centers for Disease Control and

8  Prevention ('CDC') have identified as another risk factor for severe COVID-19 complications.").

9          In addition to the case law noted above, Defendant argues that numerous district courts

10  have found similar high-risk medical factors combined with the spread of COVID-19 in federal

11  prisons constitute extraordinary and compelling reasons warranting a § 3582(c)(1)(A) sentence

12  reduction.  See, e.g., United States v. Cornelio, No. 17-CR-00321-DKW, 2020 WL 6021466, at

13  *1 (D. Haw. Oct. 12, 2020) (finding medical condition of obesity, type 2 diabetes, diabetic

14  polyneuropathy, high cholesterol, chronic breathing problems, and a high risk of cardiovascular

15  disease—along with a large outbreak of COVID-19 at FCI Big Spring, and the difficulty of

16  protecting himself from infection at that facility, constitute extraordinary and compelling

17  circumstances warranting reduction of a sentence of 135-months to time served, after serving 32

18  months of the sentence imposed after pleading guilty to methamphetamine distribution-related

19  offenses); United States v. White, No. 13-CR-20653-1, 2020 WL 2557077, at *1 (E.D. Mich.

20  May 20, 2020) (granting motion for compassionate release based on hypertension and obesity

21  after serving 80% of 120 month sentence imposed after pleading guilty to being a felon in

22  possession of a firearm and cocaine with intent to distribute).

23          The Government responds that Defendant fails to meet the burden to establish eligibility

24  for compassionate release, United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("We do not

25  mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for

26  inmates like Raia.  But the mere existence of COVID-19 in society and the possibility that it may

27  spread to a particular prison alone cannot independently justify compassionate release, especially

28  considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's

spread.").  (Opp'n 8.)[2]  The Government proffers that the general threat of COVID-19, which poses a threat to every non-immune person in the country, does not satisfy the condition that defendant seeking a sentence reduction must establish that his condition falls within one of the categories listed in the policy statement, citing United States v. Eberhart, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020) ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A).").[3]  The Government also argues that allowing release would have detrimental real-world effects resulting in the inequitable treatment of inmates, and Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a viral pandemic.  (Opp'n 9.)

More specifically in response to Defendant's motion, the Government states that while no BOP medical records exist because Defendant is not in BOP custody, medical records submitted by Defendant corroborate his claims.  Although the Government states it is "forced to rely upon Velasquez's own medical records," because there are no BOP medical records, the Government does not dispute that Defendant (1) has a history of smoking; (2) suffers from type 2 diabetes and is prescribed Metformin; (3) suffers from elevated blood pressure according to categories defined by the American Heart Association; and (4) has a current weight of 311.4 pounds, as of July 27,

---

[2]  The Court notes that while the Third Circuit stated that the danger of spread to the prison alone cannot independently justify compassionate release, the Third Circuit specifically found that the case was not ripe for adjudication by the district court because administrative remedies were never exhausted.  Raia, 954 F.3d at 597 ("We could, however, remand the case to the District Court while retaining jurisdiction over the government's appeal under Rule 12.1. That would allow the District Court to consider Raia's compassionate-release request in the first instance.  But any remand would be futile. As noted, Raia failed to comply with § 3582(c)(1)(A)'s exhaustion requirement: BOP has not had thirty days to consider Raia's request to move for compassionate release on his behalf, and there has been no adverse decision by BOP for Raia to administratively exhaust within that time period . . . . Although the District Court's indicative ruling did not mention the exhaustion requirement, it presents a glaring roadblock foreclosing compassionate release at this point.").

[3]  While the Government cites this sentence from Eberhart, the full sentence from that opinion appears more relevant to the facts of this case, as Defendant does appear to suffer from medical conditions defined in the sentencing guidelines, as the Government appears to concede below.  See Eberhart, 448 F. Supp. 3d at 1090 ("As defendant does not assert that he is suffering from a medical condition as defined in U.S.S.G. § 1B1.13, a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A).").

2020.  (Opp'n 4, 9.)  The Government acknowledges that Defendant's obesity, diabetes, and history of smoking, are recognized by the CDC as creating an increased risk of severe illness from COVID-10.  (Opp'n 9-10.)  However, the Government does highlight that the medical records show Defendant has only "elevated" blood pressure, as defined by the American Heart Association, and contends that while people with "high" blood pressure have an increased risk of severe illness from COVID-19, those with "elevated" blood pressure do not fall into the category of "hypertension," and as a result, Defendant's "elevated" blood pressure does not constitute an increased risk of severe illness from COVD-19, per CDC guidelines.  (Opp'n 10.)

Nonetheless and based on the other conditions of Defendant, the Government appears to acknowledge that these "serious, chronic health conditions that the CDC recognizes as increasing the risk of severe illness from COVID-19 would be conditions from which defendant 'is not expected to recover,' and --in the presence of COVID-19--may be both 'serious' and 'substantially diminish[] the ability of the defendant to provide self-care' in a correctional environment," U.S.S.G. § 1B1.13, cmt. n. 1(A).  (Opp'n 10.)  However, the Government argues that despite Defendant's technical eligibility under the guidelines as a result of his obesity, Type 2 diabetes, and status as a smoker, these alone do not establish an "extraordinary and compelling" reason meriting a reduced sentence by vacating his term of incarceration, noting Defendant's own medical records indicate that his diabetes is controlled with medication. (Opp'n 10.)  Defendant further proffers this is not to downplay Defendant's fears of COVID-19, but while Defendant may be "technically eligible under the Guideline," the inquiry does not end there, as Defendant's continuing danger makes him ineligible for compassionate release, and consideration of the 18 U.S.C. § 3553(a) do not support a shorter sentence.  (Opp'n 10.)

Based on Defendant's medical records, authorities cited above, and the Government's acknowledgments concerning the current conditions at the Fresno County Jail and Defendant's severe obesity, Type 2 diabetes, and status as a smoker, the Court finds that Defendant has established that he is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. §

1B1.13, cmt. n. 1(A); <u>Sharma</u>, 2020 WL 6802404, at *4; <u>Bradley</u>, 2020 WL 3802794, at *4; <u>c.f.</u> <u>United States v. Williams</u>, No. 2:13-CR-00383-TLN, 2020 WL 3402439, at *2 (E.D. Cal. June 19, 2020) ("The Court is mindful that people with certain medical conditions, including hypertension and obesity, can be more vulnerable to COVID-19 [but] Defendant fails to persuade the Court that his medical conditions qualify as an "extraordinary and compelling" reasons for release  . . . [a]s the Government points out, the CDC has not listed essential (primary) hypertension as a condition that puts individuals at a higher risk of severe illness . . . Defendant's medical records indicate he takes medication for his hypertension[,] [a]s to Defendant's obesity, Defendant does not currently fall into the high-risk group of 'severe obesity,' . . . and [w]hile Dr. Pearson states Defendant has multiple medical conditions that make it likely he has underlying cardiovascular disease, there is no evidence Defendant actually suffers from any underlying cardiovascular conditions other than hypertension [and] although Dr. Pearson states past smokers are more likely to have severe disease or die from COVID-19, there is no evidence that Defendant suffers from any underlying respiratory conditions."), <u>reconsideration denied,</u> No. 2:13-CR-00383-TLN, 2020 WL 4288035 (E.D. Cal. July 27, 2020).

Thus, extraordinary and compelling reasons for sentence reduction may be established if Defendant is also found "not a danger to the safety of any other person or to the community," and after consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a).  U.S.S.G. 1B1.13; <u>see also</u> <u>United States v. Shavlovsky</u>, No. 2:11-CR-00427-TLN, 2020 WL 5257776, at *1 (E.D. Cal. Sept. 3, 2020) ("In opposition, the Government admits Defendant's obesity is a potentially qualifying medical condition in light of COVID-19 . . . Regardless, the Government argues the Court should deny Defendant's motion because Defendant is a continuing danger to the community and the 18 U.S.C. § 3553(a) [] factors do not support a reduced sentence."); <u>United States v. Verdugo</u>, No. 2:14-CR-00341-TLN, 2020 WL 5257747, at *2 (E.D. Cal. Sept. 3, 2020) ("Assuming without deciding that Defendant satisfies the 'extraordinary and compelling' requirement, the Court nonetheless denies Defendant's request for compassionate release based on the danger Defendant poses to the community and the § 3553(a) factors.").

///

**C.      Whether Defendant Presents a Continuing Danger to the Community**

Even if Defendant's medical conditions and COVID-19 status at the Fresno County Jail may qualify as extraordinary and compelling reasons for compassionate release under the relevant sentencing guideline, Defendant must also demonstrate that he is "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).  Under § 3142(g), the court can consider a number of factors in determining whether an individual is a danger to the safety of any other person or to the community.  These factors include: (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person, including . . . the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings"; and (4) "the nature and seriousness of the danger to any person of the community that would be posed by the person's release."  18 U.S.C. § 3142(g).

The Government argues Defendant's record precludes a finding that Defendant does not pose a danger to the safety of any other person or to the community, and that Velasquez has not made a showing that he is not a danger to the community in the moving papers.  Specifically, Defendant highlights his record shows he has sustained 17 convictions, four of which involve driving with a suspended license, one involving driving without a valid driver's license, and moreover that he has incurred prison time for burglary, receipt of stolen property, and obstruction of an officer, among others.  Thus, the Government argues that Defendant's behavior reveals a flagrant and dangerous disrespect for the rule of law, and Defendant is unable to make the requisite showing that he is not a danger, United States v. Gotti, 433 F.Supp.3d 613, 615, 619-620 (S.D.N.Y. 2020) (release was inappropriate regardless of extraordinary and compelling circumstances; defendant posed a continuing danger to the public); United States v. Urso, No. 03-CR-1382, 2019 WL 5423431, at *3 (E.D.N.Y. Oct. 23, 2019); United States v. Applewhite, No. 08-CR-60037, 2020 WL 137452, at *2 (D. Or. Jan. 13, 2020) (denying compassionate

1    release for seriously ill 80-year-old inmate based on danger).  (Opp'n 11.)

2        While Defendant does not dispute his criminal history, Velasquez replies that he has in

3    fact demonstrated that he does not pose a risk of danger by continuing to live and work in the

4    community without incident, interruption, or complaint, since the inception of this case in

5    October of 2019.  (Def.'s Reply to Opp'n ("Reply") 2, ECF No. 35.)

6        The Court notes that in addition to the fact that each case cited by the Government was

7    issued before the COVID-19 pandemic, the cases provided clearly involve more serious crimes,

8    and demonstrably dangerous individuals.  For example, the first case cited by the Government

9    involved the head of the Gambino Family, a violent criminal organization.  Gotti, 433 F. Supp.

10   3d at 620 ("Gotti headed one of the most vicious and violent organized crime organizations in

11   New York for a period of years . . . Gotti personally ordered the death of a Government

12   cooperator . . . [and] [r]educing Gotti's sentence—when he has served less than half of it—would

13   undermine the goals of sentencing . . . [a]nd I reject the notion that Gotti is no longer a threat to

14   the community.").  Additionally, the court first found Gotti had not established a terminal illness

15   or other qualifying medical condition and found the continuing danger to be an additional reason

16   to deny the motion.  Id. at 619.

17       In Urso, the defendant "pleaded guilty to one count of racketeering after being charged

18   with four predicate acts: extortionate collection of credit conspiracy, illegal gambling through the

19   use of joker-poker machines, conspiracy to murder and murder, and extortion conspiracy."  Urso,

20   2019 WL 5423431, at *3.  The court noted that in particular, defendant "was involved in

21   organized crime for over thirty years as an employee and high-ranking member of the Bonnano

22   Family of La Cosa Nostra . . . engaged in extortion, illegal gambling, and murder."  Id.  Further,

23   the court found that while defendant suffered "from several physical ailments, some of which

24   [were] serious and chronic . . . he [did] not allege that he suffers from a terminal illness [nor

25   alleged] that he [was] not receiving adequate care for these conditions."  Id.  In Applewhite,

26   despite being 80 years old, the Court found it significant that five of the robberies committed by

27   the defendant were within six months of being released from prison and while on supervised

28   release, and the most recent was committed when he was 70 years old.  Applewhite, No. 6:08-

1    CR-60037-MC, 2020 WL 137452, at *2 (D. Or. Jan. 13, 2020).

2        The Court's own review of caselaw in this district also shows that denials of motions for

3    compassionate relief based on a danger to the community, where Defendant has demonstrated

4    the existence of a serious medical condition that qualified under the guidelines in the context of

5    the COVID-19 pandemic, also generally involve serious crimes involving violence.[4]

6        Nonetheless, this action is in a completely different posture, not involving a defendant

7    that has served a significant portion of a lengthy term of incarceration and seeking release

8    thereafter, but rather, Defendant has not served any part of a fifteen-day sentence imposed after

9    pleading guilty, and thus has not received the rehabilitative or deterrent effects of any part of the

10   term of incarceration imposed.   As described above in greater detail, supra Section II(C),

11

12   [4]  For example, in Verdugo, the defendant served approximately 68 months of a 113-month sentence imposed after
     pleading guilty to distribution of methamphetamine.  Verdugo, 2020 WL 5257747, at *1.  While the Government
     admitted obesity was a potentially qualifying medical condition in light of COVID-19, the Court found defendant
13   was still a danger to the community.  Id. at *2 ("The PSR indicates Defendant is a Norteños gang member . . .
     Defendant is a career offender with a history of violence, firearm possession, and drug distribution . . . was
14   convicted in the instant case for selling a considerable amount of methamphetamine [and] [w]hile the Court
     commends Defendant's efforts to rehabilitate himself while in prison, those efforts do not persuade the Court that
     Defendant no longer poses a danger to the community.").  The court also found consideration of the sentencing
15   factors weighed against granting compassionate release.  Id. ("Defendant's 113-month sentence of imprisonment is
     already well below the applicable guidelines range of 188–235 months . . . Defendant is seeking a reduction from a
16   well-supported, below-guidelines, 113-month sentence to a considerably lower 68-month sentence . . . the § 3553(a)
     factors do not support such a drastic reduction [and] [a]lthough the § 3553(a) factors specifically include the need to
17   provide Defendant with medical care in the most effective manner, it appears FCI Butner has thus far been capable
     of adequately addressing Defendant's medical needs [and] Defendant's medical needs do not outweigh the other §
18   3553(a) factors that support a 113-month sentence.").

19       In Richardson the defendant served approximately 54 months of a 135-month sentence imposed after
     pleading guilty to sex trafficking of a child.  United States v. Richardson, No. 2:16-CR-00069-TLN, 2020 WL
20   5203430, at *1 (E.D. Cal. Sept. 1, 2020).  While the Government admitted defendant's Type 2 diabetes was a
     potentially qualifying medical condition in light of COVID-19, the Court found defendant was still a danger to the
21   community.  Id. at *2 ("Defendant's crime of conviction was sex trafficking of a child . . . Defendant sexually
     abused a 16-year-old victim and caused her to work as a prostitute [and] [t]he PSR further indicates this was not an
22   isolated event . . . Defendant's criminal history includes multiple, separate incidents involving illegal prostitution
     activity [and] a history of possessing firearms, despite being prohibited from possessing firearms due to his criminal
23   record.").  The court also denied on the basis of the Section 3553(a) factors.  Id. ("This Court ultimately followed
     the probation officer's recommendation and sentenced Defendant to a 135-month term of imprisonment, which was
24   the low end of the applicable guidelines range of 135– 168 months . . . Defendant is seeking a reduction from a well-
     supported, low-end, 135-month sentence to a considerably lower 54-month sentence . . . the § 3553(a) factors do not
25   support such a drastic reduction [and] [a]lthough the § 3553(a) factors specifically include the need to provide
     Defendant with medical care in the most effective manner, it appears FMC Rochester has thus far been capable of
26   adequately addressing Defendant's medical needs."); see also United States v. Sewell, No. 2:14-CR-00270-TLN,
     2020 WL 6785329, at *1 (E.D. Cal. Nov. 18, 2020) (same analysis applied to a defendant that served approximately
27   80 months of a 211-month sentence imposed after pleading guilty to possession with intent to distribute over 5,000
     grams of heroin, possession with intent to distribute over 200 grams of cocaine, and possession of a firearm in
28   furtherance of a drug trafficking offense.

1    Defendant has a criminal history with the following seventeen adult convictions: (1) suspended

2    license in September of 2007; (2) DUI in May of 2009; (3) suspended license in May of 2009;

3    (4) suspended license in March of 2009; (5) possession of controlled substance in February of

4    2010; (6) suspended license in February of 2010; (7) no interlock ignition device in February of

5    2010; (8) no proof of financial responsibility in February of 2010; (9) possession of personal

6    identification with intent to defraud in February of 2010; (10) receipt of stolen property in

7    February of 2010; (11) first degree burglary in June of 2010; (12) possession of controlled

8    substance for sale in July of 2010; (13) obstructing a public officer in December of 2012; (14)

9    false identification to a peace officer in December of 2012; (15) concealed weapon in a vehicle

10   in November of 2013; (16) use/under influence of controlled substance in November of 2013;

11   and (17) false identification to peace officer in November of 2013.

12        Given the nature of Defendant's offense and repeated instances of similar related

13   offenses, and the Government's willingness to delay the surrender of Defendant until a time

14   when the Fresno County Jail is in a better position to handle the COVID-19 pandemic, whether

15   through greater vaccination in the coming months or otherwise, the Court finds Defendant still

16   presents a danger to the community, and Defendant's medical conditions in relation to the

17   COVID-19 situation do not outweigh the appropriateness of the sentence imposed and the goal

18   of deterring future conduct that puts community members at danger from repeated instances of

19   operating vehicles under the influence, and failing to keep a valid driver's license to operate such

20   vehicles.  See 18 U.S.C. § 3142(g).

21        **D.    Consideration of the Section 3553(a) Factors**

22        The Court must also consider the relevant sentencing factors in § 3553(a) to determine

23   whether a sentence reduction is warranted.  See 18 U.S.C. § 3582(c)(1)(A)(i); Verdugo, 2020

24   WL 5257747, at *1.

25        Defendant urges the Court to conclude a term of imprisonment is unnecessary, as here,

26   the overriding factor under § 3553(a) that was not present at the time of sentencing is the spread

27   of COVID-19 and the grave danger it poses to inmates and staff of suffering serious illness or

28   death from its complications.  Defendant emphasizes that the sentencing purpose of just

1  punishment does not warrant a sentence that includes exposure to a life-threatening illness,

2  United States v. Zukerman, 451 F.Supp.3d 329 (S.D. N.Y. Apr. 3, 2020) ("the severity of

3  Zukerman's conduct remains unchanged, . . . [w]hen the Court sentenced Zukerman, the Court

4  did not intend for that sentence to 'include incurring a great and unforeseen risk of severe illness

5  or death' brought on by a global pandemic."); United States v. Cornelio, 2020 WL 6021466, (D.

6  Haw. Oct. 12, 2020) ("At sentencing, the Court did not contemplate placing Defendant at such

7  high risk of severe reaction to such a potentially lethal disease. . . . reducing Defendant's

8  sentence . . . is just punishment under the specific circumstances presented here").  Defendant

9  submits that the totality of the circumstances demonstrates reducing Mr. Velasquez's sentence by

10 vacating his remaining term of incarceration would result in the imposition of a sentence that is

11 "sufficient, but not greater than necessary."  18 U.S.C. § 3553(a) ("The court shall impose a

12 sentence sufficient, but not greater than necessary, to comply with the purposes set forth in

13 paragraph (2) of this subsection.").

14      The Government's response generally argues that the factors do not support a request for

15 premature, permanent release, but support his current sentence, highlighting Defendant admitted

16 to driving without a valid driver's license, and "[g]iven the nature and circumstances of

17 Velasquez's crimes, criminal history, his characteristics, and threat to the public, a sentence

18 reduction is inconsistent with a careful weighing of the § 3553(a) factors and a sentence

19 reduction is not warranted."  "Because of his criminal conduct and history, Velasquez was

20 sentenced to 15 days of incarceration [and] [t]he COVID-19 pandemic does not warrant a

21 vacated [] term of incarceration for this particular defendant."  (Opp'n 11.)

22      Defendant replies that the Government does not fully recognize the risks posed by

23 incarceration because it analyses several of the pertinent factors in isolation, without

24 consideration how they interact and affect each other.  (Reply 2.)  Defendant emphasizes that the

25 concern at issue is not whether COVID-19 alone justifies relief or whether Velasquez currently

26 receives adequate medical treatment in his community, but rather that several months into the

27 pandemic, despite efforts of staff, the Fresno County Jail continues to suffer from confirmed and

28 suspected COVID-19 cases throughout the facility, and the issue is that the realities of

1   incarceration create an increased risk of COVD-19 transmission, and Defendant is at risk of

2   severe illness if he catches the virus.  (Reply 2.)

3         Further, Defendant counters that under all of the circumstances of this case, the Court

4   should conclude that a non-custodial term of probation and monetary penalty sufficiently

5   satisfies the sentencing purposes under these unusual circumstances, and under Pepper v. United

6   States, 562 U.S. 476, 490-93 (2011), the Court can, and must, consider post-offense

7   developments under Section 3553(a).  (Reply 2.)  Finally, given the overriding factor under §

8   3553(a) that was not present at the time of sentencing is the COVID-19 pandemic and the serious

9   risk it presents, Defendant proffers the Eighth Amendment's prohibition on cruel and unusual

10   punishment proscribes unreasonable exposure to dangerous conditions in custody, Helling v.

11   McKinney, 509 U.S. 25, 28 (1993); Wallis v. Baldwin, 70 F.3d 1074, 1076 (9th Cir. 1995)

12   (applying Helling to exposure to asbestos); Brown v. Mitchell, 327 F. Supp. 2d 615, 650 (E.D.

13   Va. July 28, 2004) (applying Helling to contagious diseases caused by overcrowding conditions).

14   (Reply 3.)

15         At the hearing on this motion held on January 21, 2021, the Court inquired of Defendant

16   whether this motion is in significant part, a motion for reconsideration, given that at the June 25,

17   2020 sentencing hearing, Defendant did make the Court aware of some aspects of Defendant's

18   health condition in light of the COVID-19 situation at the Fresno County Jail, when the Court

19   previously considered the sentencing factors under 18 U.S.C. § 3553(a).  Defendant's counsel

20   responded that they were not sure if all issues were raised at sentencing, and did not know the

21   full extent of the health issues at that time, in addition to the COVID-19 situation worsening at

22   the FCJ.

23         At the June 25, 2020 sentencing hearing, despite the fact that the parties had entered into

24   a plea agreement, the Defendant and the Government did not agree to precise terms and

25   conditions as to the sentence.  When the Court inquired as to why there was no precise

26   agreement, the Government proffered that there was no condition that Defendant could not argue

27   Section 3553(a) factors weighed toward a different sentence than the fifteen (15) days of

28   incarceration recommended by the Government, and the Court allowed Defendant to argue why

1  the factors may warrant a different sentence.  At the June 25, 2020 hearing, Defendant's counsel

2  did specifically proffer that Defendant suffers from diabetes, and that given the COVID-19

3  situation at FCJ, there was a fear of highly severe consequences from exposure.  Defendant

4  additionally emphasized his full time work schedule at a meat packing plant, and the support he

5  gives to his family.  Indeed, at the June 25, 2020 hearing, the Court specifically asked about

6  news stories concerning COVID-19 cases at the precise plant Defendant worked at.  Defendant

7  confirmed a variety of employees had been infected, though they worked in different positions,

8  and Defendant stated the plant employed new safety protocols.  The Court finds it not

9  insignificant that despite the very real and demonstrable dangers Defendant faced at the meat

10 packing plant, Defendant did not provide any evidence then or in support of this motion that he

11 took a leave of absence, or took other actions to protect himself from infection at his place of

12 employment.  Defendant, still employed at this plant, now requests the Court to release him from

13 a term of incarceration imposed by this Court, due to perceived danger at the FCJ, which like the

14 meat packing plant, and other places of employment or aspects of day-to-day life that people in

15 this society face every day, have certain risks from COVID-19 and have certain safety protocols

16 in place.

17      Thus, at the time of sentencing, the Court was presented with information concerning

18 Defendant's employment status, was made aware of the potentially dangerous conditions at the

19 FCJ due to COVID-19, and was made aware of one of the Defendant's medical conditions,

20 diabetes, which as discussed above, is likely sufficient alone to qualify under the sentencing

21 guidelines as a qualifying medical condition.  However, the Court notes that at the June 25, 2020

22 hearing, when stating its consideration of the § 3553(a) factors, Defendant's diabetes and

23 COVID-19 were not explicitly stated, but rather the Court focused on the nature and

24 circumstances of the Defendant's offense, his criminal history, and the facts associated with

25 those convictions.

26      Despite this motion providing additional information concerning Defendant's medical

27 conditions, and current information concerning the status of COVID-19 at the Fresno County

28 Jail, the Court finds consideration of the sentencing factors do not alter the Court's previous

1   decision that the sentence of fifteen (15) days is appropriate.  Defendant has not served any of

2   the period of incarceration imposed.  In light of the nature and circumstances of the offense, and

3   the history and characteristics of the Defendant as reflected in the prior criminal history, supra

4   Section II(C), the sentenced imposed complies with the purposes of: (A) reflecting the

5   seriousness of the offense, promoting respect for the law, and providing just punishment for the

6   offense; (B) deterring criminal conduct; (C) protecting the public from further crimes of the

7   defendant; and (D) providing defendant with correctional treatment in the most effective manner.

8   18 U.S.C. § 3553(a).  Although the § 3553(a) factors specifically include the need to provide

9   Defendant with medical care in the most effective manner, in consideration of the significant

10  safety protocols instituted at the FCJ described above, and the Government's willingness to delay

11  the surrender of Defendant until a time when the FCJ is in a better position to handle the

12  COVID-19 pandemic, whether through greater vaccination in the coming months or otherwise,

13  the Court finds consideration of the sentencing factors in relation to Defendant's medical

14  conditions and the current conditions of COVID-19 at the Fresno County Jail do not outweigh

15  the appropriateness of the sentence imposed and policy goals underlying the sentencing factors.

16  Further, as noted above, the Court is not convinced this motion for compassionate release should

17  not simply be considered a motion for reconsideration.  Given the Defendant entered into a plea

18  agreement and then waived his rights to appeal at sentencing, the Government may be left in a

19  position where the Defendant is attempting to circumvent the plea agreement and essentially

20  appealing the sentence through this motion for compassionate release despite such waiver of his

21  appeal rights.  Defendant was aware of the pertinent facts at sentencing instead requested

22  immediate sentencing.

23      Finally, while the Court appreciates the efforts Defendant has made in maintaining full-

24  time employment since the time of sentencing until now, the Court finds the employment status

25  and support for Defendant's family through such employment was specifically considered at

26  sentencing, and the allowance of the sentence to be served on weekends addresses this

27  consideration.  In fact, at the June 25, 2020 hearing, the Court initially imposed a sentence of

28  fifteen (15) days to be served on consecutive days, but immediately thereafter, Defendant

conferred with counsel and requested the sentence to be served on weekends in order to continue with his employment.  The Court immediately amended the sentence on June 25, 2020, in light of that request and the full-time work status of Defendant, to allow for serving the sentence on consecutive weekends.  The Court imposed an extremely fair and reasonable sentence in light of all the § 3553 factors and the Court must continue to promote respect for the law.

Accordingly, the Court finds the § 3553(a) factors weigh in favor of denying Defendant's motion and maintaining the currently imposed sentence.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1.    Defendant's motion for compassionate release is DENIED; and

2.    Defendant is HEREBY COMMITTED to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of fifteen (15) days, to be served on weekends beginning on Friday, April 16, 2021 at 10:00 a.m. to Sunday, April 18, 2021 at 5:00 p.m., and shall appear each consecutive weekend until his 15 days are served.[5]

IT IS SO ORDERED.

Dated:   __March 31, 2021__                      _____

UNITED STATES MAGISTRATE JUDGE

---

[5]  Given the Government's offer to stipulate to a delayed release until the spring or summer of 2021, and the Court's consideration of such fact in weighing this motion, the parties are encouraged to submit such request to the Court as soon as practicable given the term of incarceration was stayed until adjudication of this motion.